UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEITH DEAN BRADT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>T-MOBILE US, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-07752-BLF<br><br>**ORDER DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; DENYING PLAINTIFFS' ADMINISTRATIVE MOTION FOR AN ORDER EXPEDITING BRIEFING SCHEDULE ON PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE, SETTING A HEARING ON PRELIMINARY INJUNCTION, AND FOR LIMITED, EXPEDITED DISCOVERY**<br><br>[ECF 5, 35] |

Plaintiffs, 24 individual customers of national cellular mobile service providers, filed a complaint on November 25, 2019, seeking to enjoin the impending merger of T-Mobile US, Inc. (T-Mobile") and Sprint Corporation ("Sprint"), two providers of mobile communications services for alleged violations of antitrust laws. ECF 1. On the same day, Plaintiffs filed an Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue ("Application for TRO"). ECF 5. Plaintiffs filed their complaint and Application for TRO a few days before a trial was to commence in the United States District Court for the Southern District of New York, in which the Attorneys General of several states sought to enjoin the same merger for the same alleged violations of antitrust laws. *See New York, et al. v. Deutsche Telekom et al.*, Case No. 1:19-cv-05434 (S.D.N.Y.) (the "SDNY Litigation"). The Court set a status conference on

November 26, 2019. ECF 8. Shortly thereafter, the parties stipulated to and the Court ordered a briefing schedule, which in effect, stayed Plaintiffs' Application for TRO until the SDNY Litigation was decided or settled. *See* ECF 16. The parties later stipulated to and the Court ordered a modified version of that briefing schedule. ECF 28.

On February 11, 2020, the court in the SDNY Litigation entered a final judgment for Defendants. ECF 36. On February 12, 2020, Plaintiffs filed an administrative motion requesting the Court to construe Plaintiffs' Application for TRO as a motion for preliminary injunction, set an expedited briefing schedule, permit limited discovery, and set an expedited hearing (consolidated with a trial on the merits) on Plaintiffs' motion for preliminary injunction ("Administrative Motion"). ECF 35. Defendants, on the other hand, filed an opposition to Plaintiffs' Application for TRO – according to the parties' stipulated briefing schedule. Defendants' Opposition to Plaintiffs' Application for Temporary Restraining Order ("Opp'n"), ECF 37. Defendants also opposed Plaintiffs' Administrative Motion. ECF 38. The Court set a hearing for Plaintiffs' Application for TRO and Plaintiffs filed a Reply brief. *See* ECF 39, 43, 42. The Court heard oral arguments on February 27, 2020 (the "Hearing").

## I.   LEGAL STANDARD

### A.   Temporary Restraining Order

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips

sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### B. Clayton Act Section 7

Section 7 prohibits a merger if its effect "may be substantially to lessen competition." *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 355 (1963). "It is well established that a section 7 violation is proven upon a showing of reasonable probability of anticompetitive effect." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984). To evaluate the probable anticompetitive effect of a merger, courts examine "the particular market—its structure, history and probable future[.]" *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 498 (1974).

Section 7 claims are typically assessed under a burden-shifting framework. *Saint Alphonsus*, 778 F.3d at 783 (citation omitted). The plaintiff must first establish a prima facie case that a merger is anticompetitive. *Id.* A prima facie case of probable anticompetitive effect can be shown based on statistical evidence of market share. *Olin Corp. v. F.T.C.*, 986 F.2d 1295, 1305 (9th Cir. 1993). The burden then shifts to the defendant to rebut the prima facie case. *Saint Alphonsus*, 778 F.3d at 783. If the defendant successfully rebuts the prima facie case, the burden of production shifts back to the plaintiff. *Id.*

## II. ANALYSIS

### A. Plaintiffs' Application for TRO

Plaintiffs argue that the proposed merger of Sprint and T-Mobile would increase the concentration of an already highly concentrated market. *See* Application for TRO at 4. A commonly used metric for determining market share is the Herfindahl–Hirschman Index ("HHI"). *Saint Alphonsus*, 778 F.3d at 786. An HHI above 2,500 indicates a highly concentrated market. *Id.* Also, mergers that increase the HHI more than 200 points and result in highly concentrated markets are "presumed to be likely to enhance market power." *Id.* Citing to the 2018 Federal Communications Commission's ("FCC") Communications Marketplace Report, Plaintiffs argue that the current HHI concentration measure for the national wireless communication service provider market is 2,899 – which is above 2,500 and establishes a highly concentrated market. Application for TRO at 4 (citing Compl. Exh. A at 8). In addition, post-merger, the HHI of the national wireless communication

service provider market would increase by 443 HHI points – which is above 200 and is presumed to be likely to enhance market power. Application for TRO at 4 (citing Compl. Exh. A at 8). The Court is persuaded that Plaintiffs have made the prima facie showing that the merger is anticompetitive.

While statistics reflecting the shares of the market controlled by the industry leaders and the parties to the merger are "the primary index of market power; […] only a further examination of the particular market—its structure, history and probable future—can provide the appropriate setting for judging the probable anticompetitive effect of the merger." *Brown Shoe Co. v. United States*, 370 U.S. 294, 322 n. 38 (1962). The burden now shifts to Defendants to rebut the prima facie case.

Here, Defendants provide evidence that the Department of Justice's Antitrust Division ("DOJ") and the FCC each thoroughly investigated the merger, negotiated divestitures and other relief, securing a merger that would "protect competition and promote the public interest." Statement of Interest of the United States of America ("Statement") at 1, ECF 37-1, Exh. 3. The DOJ and the FCC concluded that the merger (with the negotiated relief) "benefits consumers through the combination's enhanced output—the increased availability of a higher quality mobile wireless network for consumers." *Id.* at 1-2. Most significantly, the DOJ put in place certain divestitures to Dish Network Corporation ("DISH"), which the DOJ and FCC conclude "will maintain four providers of nationwide mobile wireless service and thus preserve the competitive structure of the industry." Statement at 10; *see also* [Proposed] Final Judgment in *United States v. Deutsche Telekom AG*, 1:19-cv-02232 (D.D.C.), ECF 37-1, Exh. 5. The divestitures are designed to empower DISH to be "an effective competitor while it builds a 5G network, even without a legacy network like those of the other three nationwide mobile wireless service providers." Statement at 10. The court in the SDNY Litigation, after a two-week bench trial and a thorough analysis of the evidence, agreed with Defendants and concluded that "the FCC and DOJ remedies, and particularly those designed to ensure that DISH becomes an aggressive fourth national MNO, significantly reduce the concerns and persuasive force of Plaintiff States' market share statistics." *New York v. Deutsche Telekom AG*, No. 19 CIV. 5434 (VM), 2020 WL 635499, at *39 (S.D.N.Y. Feb. 11, 2020).

Moreover, Defendants provide evidence that the combination of Sprint's and T-Mobile's

1    complementary assets will result in a superior network and lower costs. *See* Opp'n at 8-9 (citing
2    trial testimony from the SDNY Litigation).  The court in the SDNY Litigation found "substantial
3    merit to Defendants' claims that the efficiencies arising from the Proposed Merger will lead T-
4    Mobile to compete more aggressively to the ultimate benefit of all consumers, and in particular the
5    subscribers of each of the four major competitors." *New York v. Deutsche Telekom AG*, 2020 WL
6    635499, at * 21*; see also Saint Alphonsus Med.*, 778 F.3d 775 at 790 (allowing rebuttal of a prima
7    facie case with evidence that the proposed merger will create a more efficient combined entity and
8    thus increase competition).

9          For the reasons stated on the record and in this Order, the Court is persuaded that Defendants
10   have successfully rebutted the prima facie showing of anticompetitive effect.  This shifts the burden
11   back to Plaintiffs.  Plaintiffs, however, have failed to provide any analysis whatsoever – either in
12   their reply brief or at the Hearing – of the effects of the proposed merger, in light of the divestitures
13   and other remedies imposed by the DOJ and the FCC.  *See generally*, Plaintiffs' Reply Brief in
14   Support of Application for Temporary Restraining Order and Order to Show Cause Why
15   Preliminary Injunction Should Not Issue ("Reply"), ECF 42.  Plaintiffs' arguments seem to be
16   limited to the market share analysis, some criticism of the order in the SDNY Litigation, and the
17   DOJ consent decree process.  *See* Reply at 1-2.  This is not enough.  Plaintiffs have failed to offer
18   any evidence to demonstrate that the mitigating requirements imposed by the DOJ and the FCC are
19   insufficient to ameliorate the anticompetitive effects of the proposed merger or that those
20   requirements are unlikely to actually occur.  For the foregoing reasons, the Court concludes that
21   Plaintiffs have failed to show that they are likely to succeed on the merits or that there are serious
22   questions going to the merits.

23         The Court further finds that the balance of equities tips sharply in favor of Defendants.
24   Plaintiffs delayed nineteen months after the merger was announced in April 2018, five months after
25   the SDNY Litigation commenced in June 2019, and four months after the DOJ approved the merger
26   in July 2019, before filing their Application for TRO.  On the other hand, Defendants have
27   undergone nearly two years  of review and litigation, demonstrated that funding opportunities
28   critical to the closing of the merger are set to expire on May 1, 2020, and DISH has a contractual

United States District Court
Northern District of California

5

1 right to withdraw if the merger does not close by July 26, 2020.  *See* Opp'n at 21.  Plaintiffs' lack of diligence in bringing their Application for TRO weighs heavily against granting an extraordinary remedy such as a TRO at this juncture.

### B. Plaintiffs' Administrative Motion

The Court also DENIES Plaintiffs' Administrative Motion.  The Court reviewed the parties' briefing along with the evidence submitted therein and heard arguments on Plaintiffs' Application for TRO.  Having denied the Application for TRO and recognizing that the standard for issuing a TRO is identical to the standard for issuing a preliminary injunction, the Court is not persuaded that an expedited hearing or discovery on the preliminary injunction is warranted.

### III. ORDER

For the foregoing reasons:

(1) Plaintiffs' Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue at ECF 5 is DENIED.

(2) Plaintiffs' Administrative Motion for an Order Expediting Briefing Schedule on Plaintiffs' Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue, Setting a Hearing on Preliminary Injunction, and for Limited, Expedited Discovery at ECF 35 is DENIED.

This Order is without prejudice to Plaintiffs' filing of a motion for preliminary injunction.

**IT IS SO ORDERED.**

Dated: February 28, 2020

_____
BETH LABSON FREEMAN
United States District Judge