**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| KEITH DEAN BRADT, et al., Plaintiffs, v. T-MOBILE US, INC., et al., Defendants. | Case No. 19-cv-07752-BLF **ORDER DENYING PLAINTIFFS' MOTION TO ENJOIN MERGER PENDING APPEAL** [Re: ECF 69] |

## I. INTRODUCTION

This case concerns the impending merger of T-Mobile US, Inc. ("T-Mobile") and Sprint Corporation ("Sprint"), two of the four major providers of mobile wireless communications services in the United States. Plaintiffs, twenty-four individual consumers of mobile wireless services, claim that the merger would violate federal antitrust laws. After unsuccessfully applying to this Court for a temporary restraining order ("TRO") to enjoin the merger, Plaintiffs appealed the denial of the TRO to the United States Court of Appeals for the Ninth Circuit. That appeal is pending.

On March 6, 2020, Plaintiffs filed the present motion to enjoin the merger pending appeal. Plaintiffs requested an expedited briefing schedule and shortened time for hearing. The Court granted those requests and heard oral argument on March 12, 2020. For the reasons discussed below, Plaintiffs' motion to enjoin the merger pending appeal is DENIED.

## II. LEGAL STANDARD

Plaintiffs' motion is governed by Federal Rule of Civil Procedure 62(d), titled "Injunction Pending an Appeal." Fed. R. Civ. P. 62(d). That rule provides in relevant part as follows: "While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies,

refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." *Id*. Motions for relief under Rule 62(d) are evaluated using the traditional four-factor test applicable to motions for stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)[1]; *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (discussing four-factor test). "There is substantial overlap between these and the factors governing preliminary injunctions; not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken*, 556 U.S. at 434.

The first factor does not require the movant to show that success on the merit is more likely than not. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). A demonstration of "a substantial case on the merits" or the existence of "serious legal questions" may be sufficient depending on the strength of the movant's showing on the other factors. *Id*. at 967-68. The burden is heavier with respect to the second factor, as the movant must show that absent a stay, "an irreparable injury is the more probable or likely outcome." *Id*. at 968. "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Nken*, 556 U.S. at 435. Where the movant has made a lesser showing on the first factor – establishing serious legal questions rather than a strong likelihood of success on the merits – the movant must show that the balance of hardships tips sharply in its favor. *Leiva-Perez*, 640 F.3d at 970.

**III. DISCUSSION**

Plaintiffs assert that all four factors are satisfied in this case. With respect to the first factor, likelihood of success on the merits, Plaintiffs argue that they are likely to prevail on their

---

[1] *Hilton* cites to Rule 62(c), which became Rule 62(d) when the Federal Rules of Civil Procedure were amended in 2018.

1 appeal because this Court's order denying the TRO misapplied the relevant legal authorities in
2 evaluating the likelihood that Plaintiffs would succeed on the merits of their Clayton Act § 7
3 claim. With respect to the second factor, irreparable injury, Plaintiffs contend that if the merger
4 goes forward while the appeal is pending there will be irreparable injury to competition – a
5 reduction in the number of competitors in the national market for mobile wireless communications
6 services – before the appeal can be heard. With respect to the remaining factors, potential injury
7 to Defendants and the public interest, Plaintiffs argue that any financial cost to Defendants
8 resulting from delay of the merger is insufficient to outweigh the public interest in maintaining
9 effective competition pending decision on Plaintiffs' appeal. Defendants argue that Plaintiffs have
10 not satisfied the requirements for obtaining an injunction of the merger pending appeal.

### A. Likelihood of Success / Serious Questions Going to the Merits

In order to obtain an injunction pending appeal, Plaintiffs must establish a likelihood of success on their appeal or at least serious questions going to the merits of the appeal. Plaintiffs assert that this factor is met because the Court misapplied the relevant legal authorities in evaluating the likelihood of Plaintiffs' success on the merits of their Clayton Act § 7 claim.

In its order denying Plaintiffs' application for a TRO ("Denial Order"), the Court determined that Plaintiffs had not established a likelihood of success or serious questions going to the merits of their Clayton Act § 7 claim. *See* Denial Order at 5, ECF 52. The Court relied primarily on *United States v. Gen. Dynamics Corp.*, 415 U.S. 486 (1974), and *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775 (9th Cir. 2015), in setting forth the requirements for proving a claim under the Clayton Act § 7. *See id*. at 3. Section 7 "bars mergers whose effect 'may be substantially to lessen competition, or to tend to create a monopoly.'" *Saint Alphonsus*, 778 F.3d at 783 (quoting 15 U.S.C. § 18). Section 7 claims are assessed under a burden-shifting framework, under which the plaintiff first must establish a *prima facie* case that a merger is anticompetitive, the defendant then has the burden to rebut the *prima facie* case, and if the defendant successfully rebuts the *prima facie* showing, the plaintiff has the ultimate burden of persuasion. *Id.*

Applying that framework, the Court found that Plaintiffs had made out a *prima facie* case

that the merger is anticompetitive. *See* Denial Order at 4. The Court also found that Defendants had rebutted the *prima facie* case with evidence that the Department of Justice's Antitrust Division ("DOJ") and the Federal Communications Commission ("FCC") investigated the merger and negotiated divestitures to Dish Network Corporation ("DISH") that will enable DISH to become a major competitor in the nationwide mobile wireless services market and thus preserve the competitive structure of the industry. *See id.* This Court observed that the United States District Court for the Southern District of New York ("SDNY") had conducted a two-week bench trial in which Attorneys General of several states sought to enjoin the same merger for the same antitrust violations alleged here. *See* Denial Order at 4. The SDNY court concluded that the merger does not violate antitrust laws, relying in part on the negotiated divestitures to DISH designed to ensure that DISH becomes an aggressive fourth competitor in the relevant market. *See id.*

This Court took note of evidence culled from the SDNY trial record, and presented by Defendants here, that efficiencies arising from the merger will lead T-Mobile to compete more aggressively to the ultimate benefit of all consumers. Denial Order at 5. The Court cited *Saint Alphonsus* for the proposition that a prima facie case may be rebutted "with evidence that the proposed merger will create a more efficient combined entity and thus increase competition." *Id.* The Court found that Plaintiffs had "failed to offer any evidence to demonstrate that the mitigating requirements imposed by the DOJ and the FCC are insufficient to ameliorate the anticompetitive effects of the proposed merger or that those requirements are unlikely to actually occur." *Id.* at 5. For those reasons, the Court concluded that Plaintiffs had failed to show a likelihood of success or serious questions going to the merits. *Id.*

In their current motion, Plaintiffs correctly argue that Defendants' evidence of post-merger efficiencies is not sufficient, standing alone, to rebut a *prima facie* case. *See Saint Alphonsus*, 778 F.3d at 790 ("[A] successful efficiencies defense requires proof that a merger is not, despite the existence of a *prima facie* case, anticompetitive."). To the extent that its Denial Order suggested otherwise, the Court now clarifies that its ruling on Plaintiffs' TRO application did not turn solely or even primarily on evidence of post-merger efficiencies. As stated at the February 27, 2020 hearing on Plaintiffs' application for a TRO, the Court found that Defendants had submitted

4

substantial evidence that the measures required by the DOJ and FCC – especially the divestiture to DISH to create a fourth market competitor – would sufficiently ameliorate the anti-competitive effects of the proposed merger. That evidence was sufficient to rebut the *prima facie* case established by Plaintiffs, and on that basis the Court determined that the burden shifted back to Plaintiffs to demonstrate the likely anticompetitive effects of the merger in its ultimate form, taking into account the DOJ and FCC requirements. Plaintiffs failed to meet that burden and thus failed to show a likelihood of success or serious questions going to the merits of their Clayton Act § 7 claim.

Plaintiffs have not presented any new evidence related to the "structure, history and probable future" of the wireless communications market that would support their argument that the T-Mobile-Sprint merger *in its current form* would have probable anticompetitive effects. *See Gen. Dynamics*, 415 U.S. at 498. Plaintiffs rely on a 2018 FCC Communications Marketplace Report, Alioto Decl. Exh. A, ECF 69-1; a 2011 complaint filed by Sprint against AT&T, Inc. and others, alleging Clayton Act violations, Alioto Decl. Exh. B, ECF 69-1; and a blog post summarizing a telecommunications consultant's comments about an unnamed DISH employee's opinion regarding DISH's capabilities in obtaining competitive coverage, Alioto Decl. Exh. C, ECF 69-1. The 2018 FCC Communications Marketplace Report and the 2011 complaint prove nothing with respect to the merger in its current form, as modified in accordance with DOJ and FCC requirements, and the blog post proves nothing at all.

Accordingly, the Court finds that Plaintiffs have failed to demonstrate a likelihood of success on or serious questions going to the merits of their appeal. That failure is fatal to Plaintiffs' motion for an injunction pending appeal. *See Nken*, 556 U.S. at 434 (showing of likelihood of success is "critical"). The Court nonetheless addresses the other factors of the test for the sake of completeness.

**B.     Irreparable Injury**

Plaintiffs must show that they will suffer irreparable injury absent an injunction of the merger pending disposition of their appeal of the Denial Order. Plaintiffs rely on a four-paragraph declaration of Plaintiff Clyde Stensrud that was submitted in support of the TRO application. *See*

Stensrud Decl., ECF 7. Mr. Stensrud states that he is a long-time customer of Sprint and he speculates that if the merger goes forward he will "be harmed in the future by higher prices, fewer plans, fewer choices, less innovation, and reduced service." Stensrud Decl. ¶ 4. Mr. Stensrud provides no factual basis for these speculations. Moreover, any monetary loss could be fairly compensated with a monetary damages award.

Plaintiffs also assert that as part of the merger transaction, "35,000 cell towers will be decommissioned." Pl.'s Motion for Injunction Pending Appeal at 4, ECF 69. Plaintiffs appear to assume that the reduction of the number of cell towers will reduce service. At the hearing, Plaintiffs further argued that 400 retail locations will close if the merger goes forward. Defendants respond that Plaintiffs' arguments are not based on the facts. Defendants argue that any reduction in cell towers is geared to eliminating unnecessary duplication and that Sprint's radios will be transferred to T-Mobile towers. Defendants further explain that the DOJ/FCC settlements provide that DISH has the option to take over all of the decommissioned cell towers and retail locations, thus ameliorating the concerns expressed by Plaintiffs. Defendants' position is supported by the order of the SDNY court, the DOJ/FCC settlements, and the record in that case. Plaintiffs have not provided any contrary evidence regarding the impact of decommissioning cellular towers or closing retail locations.

Plaintiffs further attempt to satisfy this factor by asserting that irreparable injury is established by the merger itself – an argument tantamount to a *per se* rule whenever a merger is proposed. Plaintiffs' position is not supported by the cases they cite. Plaintiffs rely on an out of circuit case, *Hosp. Corp. of Am. v. F.T.C.*, 807 F.2d 1381 (7th Cir. 1986), for the proposition that the Supreme Court's 1960s antitrust jurisprudence establishes the illegality of any nontrivial acquisition of a competitor. Even if it were inclined to follow out-of-circuit precedent that has not been adopted by the Ninth Circuit, which it is not, this Court is unpersuaded by Plaintiffs' selective reliance on portions of the cited case. The Seventh Circuit's review in *Hosp. Corp.* was limited to determining whether the FTC's decision was supported by substantial evidence. *Id.* at 1385. Moreover, Plaintiffs ignore Judge Posner's acknowledgement in *Hosp. Corp.* that later Supreme Court decisions have limited the scope and reach of its 1960s decisions, *see id.* at 1386, a

6

point this Court discussed at the TRO hearing, *see* TRO Hrg. Tr. 17:11-18, ECF 63.

Plaintiffs have failed to demonstrate that they are likely to suffer irreparable injury sufficient to warrant issuance of an injunction pending appeal, particularly in light of their failure to establish any of the other required elements. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (internal quotation marks and citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify" the requested relief. *Id*. Plaintiffs have not done so here.

### C. Injury to Other Parties

Plaintiffs must establish that issuance of an injunction pending appeal will not substantially injure other parties interested in the proceeding. This Court previously determined in the context of the TRO application that the issuance of injunctive relief would substantially injure Defendants, and that the balance of equities tips in Defendants' favor. The Court reaffirms that conclusion here. Defendants have received DOJ and FCC approval based on a modified merger plan with significant divestiture to DISH so that DISH may enter the market as a competitor. Defendants have prevailed in a two-week trial on the merits in the SDNY that was fiercely litigated by numerous attorneys general. And, T-Mobile now faces expiration of its bridge financing on May 1, 2020 if the merger does not go forward.[2] Delay may significantly imperil this $26 billion merger that has been in the works for almost two years. While Plaintiffs argue conclusorily that Defendants will not be injured if the merger is delayed pending appeal, that argument is not supported by this record.

Plaintiffs have failed to show that this factor favors an injunction of the merger pending appeal.

### D. Public Interest

Plaintiffs argue that an injunction of the merger pending appeal is in the public interest, because an injunction would maintain the status quo of existing competition in the nationwide market for mobile wireless communications services. Plaintiffs' argument ignores the facts that

---

[2] T-Mobile also faces significant costs of financing while it waits for this case to terminate, as outlined in the Declaration of Dana Taylor. *See* Taylor Decl., ECF 74-2.

the DOJ and FCC both have determined that going forward with the merger is in the public interest, and that the SDNY has determined that the merger will not impair competition in violation of federal antitrust laws. Plaintiffs present no evidence sufficient to controvert the determinations of the two agencies and the district court.

Meanwhile, the Court cannot ignore that Plaintiffs delayed filing this suit until nineteen months after the merger announcement. As Plaintiffs' counsel, Mr. Alioto, candidly discussed with the Court at the TRO hearing, he purposefully delayed filing suit after speaking to the state attorney general. TRO Hrg. Tr. 54:14-17, ECF 63. Thus, any emergency is one of Plaintiffs' own making. Had suit been filed one year ago, a trial on the merits could have been completed by now. Having chosen to sit back and wait, Plaintiffs cannot credibly claim that emergency relief is necessary to protect the public interest.

Plaintiffs have failed to show that this factor favors an injunction of the merger pending appeal.

## IV. ORDER

Plaintiffs' motion to enjoin the merger pending appeal is DENIED.

Dated: March 13, 2020

BETH LABSON FREEMAN
United States District Judge